UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:                                                        Chapter 7

Davinder Pal Singh,                                           Case No. 16-41529-cec


                        Debtor(s).
-------------------------------------------------------------x

Capital One Equipment Finance Corp.
dba Capital One Taxi Medallion Finance,                       Adv. Pro. No. 16-01165-cec


                        Plaintiff,

        -against-

Davinder Pal Singh,


                        Defendant.
-------------------------------------------------------------x



DECISION ON MOTION FOR SUMMARY JUDGMENT




APPEARANCES

Carlo M. Ingato, Esq                          Homdat Misra, Esq
McCarter and English, LLP                     Law office of Hector Roman
100 Mulberry Street                           37-18 73rd Street
Newark, New Jersey 07102                      Jackson Heights, NY 11372
*Counsel for Plaintiff Capital One Equipment*  *Counsel for Defendant Davinder Pal Singh*
*Finance Corp. dba Capital One Taxi*
*Medallion Finance*



CARLA E. CRAIG
Chief United States Bankruptcy Judge

This matter comes before the Court on the motion for summary judgment of Capital One Equipment Finance Corp. *dba* Capital One Taxi Medallion Finance (the "Plaintiff"), a secured creditor of Davinder Pal Singh (the "Debtor" or "Defendant"), seeking a denial of discharge pursuant to 11 U.S.C. §§ 727(a)(2)(A)&(B) and 727(a)(4)(A).[1] Plaintiff alleges that Defendant concealed or transferred property with the intent to defraud creditors both within one year before the filing of this case and after the date of the filing. Plaintiff also alleges that Defendant knowingly and fraudulently made false oaths or accounts in this case. Defendant opposes the motion. Because the Court finds that the Debtor has made false oaths and accounts in connection with the bankruptcy schedules and Statement of Financial Affairs ("SOFA") in this case, the motion for summary judgment is granted and Defendant's discharge is denied.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and the Eastern District of New York standing order of reference dated August 28, 1996. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(J). This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Federal Rule of Bankruptcy Procedure 7052.

## BACKGROUND

The facts set forth below are not in dispute except where otherwise noted.

Debtor is a taxi driver and holds a NYC taxi medallion purchased in 2012 for $720,000. (2004 Exam Tr. 105:6-12, Pl.'s Mot. Summ. J. Ex. B, ECF No. 11-5.).[2] On September 19, 2013, the Debtor executed a loan agreement for $840,000 with First Jersey Credit Union to refinance the medallion, of which loan was subsequently assigned to the Plaintiff on the same day. (Compl.

---

[1] All statutory references are to the Bankruptcy Code, 11 U.S.C. § 101 et seq. and all reference to rules are to the Federal Rules of Bankruptcy Procedure, unless otherwise indicated.

[2] All references to "ECF No." are to the docket in this adversary proceeding, Adv. Pro. No. 16-01165, unless otherwise indicated.

¶¶25-27, ECF No. 1; Answer ¶¶25-27, ECF No. 1; Def.'s Aff. Opp'n to Pl.'s Mot. Summ. J. ¶9, ECF No. 14; Proof of Claim No. 1 Exs. A, F, Case No. 16-41529.). On April 11, 2016, Defendant filed a voluntary petition under chapter 7 of the Bankruptcy Code along with his schedules and SOFA (the "Petition"). (Pet., Case No. 16-41529, ECF No. 1.). Debtor listed his residence as 135-39 120th Street, South Ozone Park, NY 11420 (the "Residence Property") and claimed that he owned one-fourth of the Residence Property on Schedule A/B. (Schedules, Case No. 16-41529, ECF No. 1.). On Schedule C, he claimed a homestead exemption with respect to the Residence Property. (Id.). In the SOFA, which the Debtor signed under penalty of perjury, he answered "no" to questions numbered seven and eight, which ask whether the Debtor made any payment on any debt owed to an insider, or made a payment or transferred property on account of a debt that benefited an insider, within the year prior to the filing of the Petition. (SOFA, Case No. 16-41529, ECF No. 1.). Debtor also answered no to question numbered eighteen, which asks whether the Debtor sold, traded or transferred any property not in the ordinary course of business or financial affairs within two years prior to the filing of the Petition. (Id.).

An initial meeting of creditors pursuant to § 341 of the Bankruptcy Code was held on May 20, 2016 (the "341 Meeting"). After the 341 Meeting, Debtor filed amended Schedule A/B and amended Schedule C on June 8, 2016 (the "First Amended Schedules"). (1st Am. Schedules, Case No. 16-41529, ECF No. 14.). Debtor changed the address of the property in which he claimed an ownership interest and in which he claimed a homestead exemption on these two schedules from the Residence Property to 130-03 122nd Street, South Ozone Park, NY 11420 (the "Investment Property"). (Id.).

On July 8, 2016, Plaintiff conducted an examination of the Debtor pursuant to Rule 2004 (the "2004 Examination"). On July 7, 2016, the day before the 2004 Examination, the Debtor

provided to the Plaintiff his bank statement for the month of May 2015. (Pl.'s Att'y Certification ¶9, ECF No. 11-3.). According to the bank statement, there was a deposit of $55,000 into Debtor's bank account on May 18, 2015, within one year before the filing of the Petition. (2004 Exam Tr. 72:5-73:2; Def.'s Aff. Opp'n to Pl.'s Mot. Summ. J. ¶¶22-23, ECF No. 14.). On September 20, 2016, Plaintiff filed a complaint commencing the instant adversary proceeding (the "Complaint"). (Compl., ECF No. 1.). On October 24, 2016, Debtor filed an answer to the Complaint. (Answer, ECF No. 4.). Plaintiff conducted a deposition of the Debtor on January 12, 2017 and a deposition of Debtor's father, Sham Singh, on March 8, 2017 (the "Depositions"). On April 27, 2017, Plaintiff filed a motion for summary judgment pursuant to §§ 727(a)(2)(A)&(B) and 727(a)(4)(A) (the "Summary Judgment Motion"). (Pl.'s Mot. Summ. J., ECF No. 11.). On July 13, 2017, Defendant's counsel filed a declaration in opposition to the Summary Judgment Motion (the "Opposition"). (Def.'s Att'y. Decl. Opp'n to Pl.'s Mot. Summ. J., ECF No. 13.). Debtor also filed second amended Schedule A/B and amended Schedule D on the same day of filing the Opposition (the "Second Amended Schedules"). (2d Am. Schedules, Case No. 16-41529, ECF Nos. 32-33.). Debtor amended Schedule A/B to state the nature of his ownership interest in the Investment Property as "Fee simple" rather than "Equitable Interest"; on Schedule D, he amended the value of the Investment Property from $570,000 to $538,000. (Id.). The Debtor did not, however, amend Schedule C to remove his claimed homestead exemption in the Investment Property. (Id.). On July 17, 2017, Plaintiff filed a reply to the Defendant's Opposition. (Pl.'s Reply to Def.'s Att'y. Decl., ECF No. 17.). On August 8, 2017, the Court held a hearing on the above motions (the "Hearing") and reserved decision.

STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In ruling upon a summary judgment motion, the Court's job is not to resolve disputed issues of fact, but to determine whether a genuine issue of fact exists. See Celotex Corp. v. Catrett, 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "When viewing the evidence, the court must 'assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in [the non-movant's] favor.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir.2000) (citing Delaware & Hudson Railway Co. v. Consolidated Rail Corp., 902 F.2d 174, 177 (2d Cir.1990)), cert. denied, 540 U.S. 811, 124 S.Ct. 53, 157 L.Ed.2d 24 (2003). "The nonmoving party must show that there is more than a metaphysical doubt regarding a material fact and may not rely solely on self-serving conclusory statements." Rosenman & Colin LLP v. Jarrell (In re Jarrell), 251 B.R. 448, 450–51 (Bankr. S.D.N.Y. 2000) (citations omitted).

DISCUSSION

Denial of discharge is an extreme penalty, and therefore § 727 must be construed strictly against the objector and liberally in favor of the debtor. State Bank of India v. Chalasani (In re Chalasani), 92 F.3d 1300, 1310 (2d Cir. 1996). Courts must exercise even greater caution when considering denial of discharge sought by motion for summary judgment. Desiderio v. Devani (In re Devani), 556 B.R. 37, 41 (Bankr. E.D.N.Y. 2016). However, a discharge in bankruptcy is a privilege, not a right, and is reserved only for the honest but unfortunate debtor. Christy v. Kowalski (In re Kowalski), 316 B.R. 596, 600-01 (Bankr. E.D.N.Y. 2004).

Plaintiff argues that Defendant's discharge should be denied under § 727(a)(2), on the

grounds that Defendant, with fraudulent intent, concealed and transferred property of the Debtor within one year pre-petition and also transferred property of the estate post-petition. Plaintiff also contends that Defendant's discharge should be denied under § 727(a)(4)(A), on the grounds that Defendant knowingly and fraudulently made false oaths and accounts in his bankruptcy petition. Plaintiff alleges the following false statements or omissions in Debtor's schedules or SOFA: false claims of a homestead exemption, omission of debt owed to Debtor's father and undisclosed transfers made to his brother and father within the one-year period pre-petition.

I.        False Oaths or Accounts Under § 727(a)(4)(A)

Under § 727(a)(4)(A), the court may deny a debtor a discharge if "the debtor knowingly and fraudulently, in or in connection with the case ... made a false oath or account." 11 U.S.C. § 727(a)(4)(A). To deny a debtor a discharge under § 727(a)(4)(A), the plaintiff must establish that: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew that the statement was false; (4) the debtor made the statement with intent to deceive; and (5) the statement related materially to the bankruptcy case. In re Virovlyanskiy, 485 B.R. 268, 272 (Bankr. E.D.N.Y. 2013) (citing Dubrowsky v. Estate of Perlbinder (In re Dubrowsky), 244 B.R. 560, 572 (E.D.N.Y. 2000)). The burden is on the plaintiff to prove each element by a preponderance of the evidence. In re Pongvitayapanu, 487 B.R. 130, 139 (Bankr. E.D.N.Y. 2013). Once a plaintiff produces evidence of a false statement, the burden shifts to the debtor to produce a "credible explanation." In re Shah, 388 B.R. 23, 37 (Bankr. S.D.N.Y. 2008); Casa Invs. Co. v. Brenes (In re Brenes), 261 B.R. 322, 334 (Bankr. D. Conn. 2001). If the debtor fails to provide evidence that the false statement was unintentional, or to provide a credible explanation, a court may infer fraudulent intent. Pergament v. DeRise (In re DeRise), 394 B.R. 677, 691 (Bankr. E.D.N.Y. 2008). However, the overall burden of proof remains with the

moving party.  See., e.g., BTE Concrete Formwork, LLC v. Arbaney (In re Arbaney), 345 B.R. 293, 301 (Bankr. D. Colo. 2006).

A.   Elements 1 and 2: False Statements and Omissions under Oath

Statements under oath include statements in documents filed with the Bankruptcy Court which are made under penalty of perjury, such as the bankruptcy schedules and SOFA filed with the petition, as well as statements by the debtor during examinations under oath, such as testimony during the meeting of creditors held pursuant to § 341(a). In re Moreo, 437 B.R. 40, 61 (Bankr. E.D.N.Y. 2010) (citing In re Steinberg, 143 F.2d 942, 942-43 (2d Cir. 1944)). In this case, there is no dispute that statements made by the Debtor in his Petition, schedules, SOFA and in his testimony were all under oath, meeting the first requirement of the test. (Compl. ¶¶7-9, 22, ECF No. 1; Answer ¶¶7-9, 22, ECF No. 4.).

Debtor's schedules and SOFA submitted contained multiple false statements. A statement is false if (1) it omits even one asset or source of income; (2) necessary[ ] material information is repeatedly left undisclosed during a case's pendency; or (3) an affirmative misstatement[ ] is made and is not corrected during an examination or at any point during his case's proceeding." In re Antoniou, 515 B.R. 9, 22 (Bankr. E.D.N.Y. 2014) (citing Lisa Ng v. Adler (In re Adler), 494 B.R. 43, 75 (Bankr. E.D.N.Y. 2013)).

Debtor made multiple false statements in claiming, on his original and amended schedules, a homestead exemption. Debtor stated on his original schedules that he owns one-fourth of the Residence Property, in which he resides, and claimed a homestead exemption with respect to that property. (Schedules, Case No. 16-41529, ECF No. 1.). Debtor then acknowledged in the 341 Meeting that he did not own the Residence Property and therefore could not claim a homestead exemption in it. (Def.'s Att'y. Decl. Opp'n to Pl.'s Mot. Summ. J. ¶¶34-35, ECF No. 13.). Debtor

testified that he had an ownership interest in the Investment Property, in which he did not reside. (Id.). Debtor attributed the error to the similar addresses of the two properties. (Id.). Debtor subsequently amended the property address on Schedule A/B to reflect the address of the Investment Property, but also claimed an exemption in the Investment Property on amended Schedule C, to which he is clearly not entitled, because it was not his residence.[3] (1st Am. Schedules, Case No. 16-41529, ECF No. 14.). Both claims of a homestead exemption were false because Debtor either did not own the property in which he claimed an exemption or did not reside there, as Debtor acknowledged. (Def.'s Aff. Opp'n to Pl.'s Mot. Summ. J. ¶21, ECF No. 14; 2004 Exam Tr. 119:8-121:16, ECF No. 11-5.). Although the Debtor amended his schedules at the time of filing his Opposition to the Summary Judgment Motion, his claimed homestead exemption in the Investment Property under N.Y.C.P.L.R. § 5206 was never withdrawn. (1st Am. Schedules, Case No. 16-41529, ECF No. 14.).

Debtor also made false statements by failing to disclose transfers to family members made within one-year pre-petition in his SOFA.

    a)  Payments of debt to Debtor's father

In response to question numbered seven in the SOFA, "Within 1 year before you filed for bankruptcy, did you make a payment on a debt you owed anyone who was an insider?", Debtor checked the box stating "no." (SOFA, Case No. 16-41529, ECF No. 1.). In response to question numbered eight, "Within 1 year before you filed for bankruptcy, did you make any payments or transfer any property on account of a debt that benefited an insider?", Debtor also checked the box

---

[3] N.Y.C.P.L.R. § 5206(a), applicable in this bankruptcy case pursuant to 11 U.S.C. § 522, permits a debtor to claim as exempt real property not exceeding $165,550 in value above liens and encumbrances, which is "owned and occupied as a principal residence" by the debtor at the time of the filing of this Petition. See In re Varrone, 2012 WL 1079005 at 4 (Bankr. E.D.N.Y. 2012) (citing In re Martinez, 392 B.R. 530, 531 (Bankr. E.D.N.Y. 2008)) ("In order to be entitled to a homestead exemption, N.Y.C.P.L.R. § 5206 requires evidence of two things: an ownership interest in real property and residency by the [d]ebtor in that property.").

stating "no." (Id.). Debtor did not list any debt owed to family members on Schedule E/F. (Schedules, Case No. 16-41529, ECF No. 1.). Debtor subsequently admitted that he received a $120,000 loan from his father in 2012, the unpaid balance of which he never disclosed on his schedules. (Compl. ¶30, ECF No. 1; Answer ¶30, ECF No. 4; 2004 Exam Tr. 102:14-105:19, ECF No. 11-5; Def.'s Aff. Opp'n to Pl.'s Mot. Summ. J. ¶3, ECF No. 14.). Deposition testimony of Debtor's father also revealed that the Debtor made undisclosed payments on this loan within one year before filing for bankruptcy. (Sham Singh Dep. 47:12-48:24, Pl.'s Mot. Summ. J. Ex. D, ECF No. 11-7.). The Debtor does not dispute that he made payments to his father during the year prior to the filing of his Petition.[4] (Mot. Summ. J. Hr'g Tr. 10:23-11:25, ECF No. 20.). The debt and payments to Debtor's father should have been disclosed to give the trustee an opportunity to determine whether the payments were recoverable as preferential transfers under § 547. See, e.g., In re Gobindram, 2014 WL 2809078 at 3 (Bankr. S.D.N.Y. 2014) (debtor denied discharge based on failure to disclose that she paid $27,000 to his wife as well as paying off some of her credit card bills within one year of filing); In re Wolpe, 2013 WL 1700930 at 7 (Bankr. N.D.N.Y. 2013) (debtor denied discharge based on failure to disclose on SOFA payments of at least $2,500 made to his mother within one year of filing); In re Anderson, 350 B.R. 803, 809 (Bankr. N.D. Ill. 2006) (debtor denied discharge based on failure to disclose payment of an antecedent debt in excess of $7,000 to a family friend within one year of filing); In re Maida, 2000 WL 777875 at 5 (Bankr. N.D. Ill. 2000) ("[t]he omission of … transfers amounting to thousands of dollars to insider family members from the original and amended Schedules and Statement of Affairs … is simply too

---

[4] Plaintiff asserts in his submitted Statement of Undisputed Facts that the Debtor made monthly payments to his father during the one-year period prior to the filing of his Petition. (Pl.'s S. Undisputed Facts at 7-8, ECF No. 11-2.). Plaintiff cites to the deposition testimony of Debtor's father in support of this factual assertion. (Id.). Because the Debtor did not deny this factual assertion in his Opposition to the Summary Judgment Motion, this fact is considered undisputed for the purpose of this Summary Judgment Motion under Rule 7056(e).

substantial to overlook or attribute to mere negligence or simple inadvertence on the part of the [d]ebtors").

        b)   Transfers not in the ordinary course of business to Debtor's brother

In response to question numbered eighteen in the SOFA, "Within 2 year before you filed for bankruptcy, did you sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs?", Debtor checked the box stating "no." (SOFA, Case No. 16-41529, ECF No. 1.). Debtor subsequently admitted that he transferred $55,000 from his bank account to his brother directly or indirectly via checks or cash within one year before filing for bankruptcy. (2004 Exam Tr. 75:1-78:14, ECF No. 11-5; Def.'s Aff. Opp'n to Pl.'s Mot. Summ. J. ¶¶15-16, ECF No. 14.). Although the $55,000 was deposited into Debtor's bank account, Debtor argued it was not his property because he was only holding it for his brother for a short period of time. (2004 Exam Tr. 72:5-21, ECF No. 11-5; Def.'s Aff. Opp'n to Pl.'s Mot. Summ. J. ¶¶15-16, ECF No. 14.). However, as a general rule of New York law, once funds are deposited in bank account, account holder is presumed to have title to, and control over, those funds. See McHale v. Boulder Capital LLC (In re 1031 Tax Group, LLC), 439 B.R. 47, 70-71 (Bankr. S.D.N.Y. 2010); L.F.D. Operating Inc. v. Ames Dep't Stores, Inc. (In re Ames Dep't Stores, Inc.), 274 B.R. 600, 617 (Bankr. S.D.N.Y. 2002). In In re Warr, 410 B.R. 891 (Bankr. D. Idaho 2009), the wife of the debtor deposited $50,000 into their joint bank account and then drew two $25,000 checks from this account to pay a joint debt. In re Warr, 410 B.R. at 895-97. As the Debtor in the instant case, the debtor in Warr tried to justify his failure to disclose those payments on his SOFA by arguing that the money came from his father-in-law and thus was not his property. Id. at 896. The court there found the debtor's argument without merit because under state law, funds in a joint bank account are presumptively the property of the owners of the account.

Id. at 897. Similarly, the transfer of $55,000 from the Debtor to his brother should also have been disclosed on his SOFA and his failure to do so constitutes a false statement. See e.g., In re Rao, 526 B.R. 623, 29 (Bankr. E.D. La. 2015) (debtor denied discharge based on failure to disclose transfers of over $37,000 to relatives not in the ordinary course of business within two years preceding his bankruptcy); In re Urbonas, 539 B.R. 533, 539-40, 555 (Bankr. N.D. Ill. 2015) (debtor denied discharge based on failure to disclose transfers of over $32,000 to family members not in the ordinary course of business within two years preceding his bankruptcy).

      B.  Element 3: Knowledge of False Statements

In order to deny a debtor discharge under § 727(a)(4)(A), the debtor's fraudulent statement must have been made with knowledge and with fraudulent intent to deceive. Moreo, 437 B.R. at 62. In determining a debtor's knowledge of the falsehood of a statement, "[c]ourts may consider the debtor's education, business experience, and reliance on counsel ... but the debtor is not exonerated by pleading that he or she relied on patently improper advice of counsel." Bub v. Rockstone Capital, LLC, 516 B.R. 685, 695 (E.D.N.Y. 2014). The knowledge requirement is satisfied by showing that "the bankrupt knows what is true and, so knowing, wilfully and intentionally swears to what is false." Moreo, 437 B.R. at 62 (citations omitted). Debtor's own motions state that "[he] is aware that mistakes and omissions were made a part of the initial filing of the voluntary petition and schedules." (Def.'s Att'y. Decl. Opp'n to Pl.'s Mot. Summ. J. ¶20, ECF No. 13.). Though Debtor tried to explain away these false statements by saying he was not highly educated and lacked a understanding of bankruptcy law, Debtor was represented by counsel throughout the bankruptcy proceeding. See Moreo, 437 B.R. at 64 (although debtors were only high school educated, they were represented by counsel). Nor did Debtor claim he relied on improper legal advice. Therefore the third element of the test is also met.

C.  Element 4: Fraudulent Intent

Fraudulent intent, for purposes of § 727(a)(4)(A), can be established by a showing of actual fraud, through evidence of the traditional badges of fraud, or by the debtor's reckless disregard for the truth of his statements. Adler, 494 B.R. at 77. Reckless disregard for the truth is analyzed by considering the following factors: "(a) the serious nature of the information sought and the necessary attention to detail and accuracy in answering; (b) a debtor's 'lack of financial sophistication' as evidenced by his or her professional background; and (c) whether a debtor repeatedly blamed recurrent errors on carelessness or failed to take advantage of an opportunity to clarify or correct inconsistencies." Id. (internal quotations and citations omitted). A failure to amend schedules can give rise to an inference of fraud. In re Carl, 517 B.R. 53, 71 (Bankr. N.D.N.Y. 2014) (citing Britton Motor Service v. Krich (In re Krich), 97 B.R. 919, 923 (Bankr. N.D. Ill. 1988) (indicating that failure to promptly amend schedule to reflect omitted assets is indicative of knowing and fraudulent conduct)). Failure to amend a petition after inconsistencies are raised has been held to be reckless indifference to the truth. Carl, 517 B.R. at 71 (citing Bohm v. Dolata (In re Dolata), 306 B.R. 97, 144 (Bankr. W.D. Pa. 2004)).

Although a debtor's prompt amendment of schedules upon becoming aware of an omission may be taken into account and negate a finding of fraudulent intent, Debtor did not promptly amend his schedules in this case. In re Haddad, 2016 WL 4523829 at 3 (Bankr. E.D.N.Y. 2016). To the contrary, Debtor repeatedly failed to correct his schedules. Debtor became aware that he made a false claim for homestead exemption to the Residence Property as early as at the 341 meeting. (Def.'s Att'y. Decl. Opp'n to Pl.'s Mot. Summ. J. ¶35, ECF No. 13.). Although Debtor corrected Schedule A/B by removing the Residence Property and listing the Investment Property, he made another false statement by amending Schedule C to claim an exemption in the Investment

Property, in which he did not reside on the Petition day. (Def.'s Aff. Opp'n to Pl.'s Mot. Summ. J. ¶21, ECF No. 14.). Debtor was confronted with this false statement at the 2004 Examination and stated he would further amend his schedule C, but he never did. (Id.; 2004 Exam Tr. 121:11-16, ECF No. 11-5.). With respect to the undisclosed debt and payments to Debtor's father, inquiries were first made at the 341 Meeting, before the First Amended Schedules were filed. (Compl. ¶14, ECF No. 1; Answer ¶14, ECF No. 4.). The existence of the loan owed to Debtor's father and payments on it, as well as the $55,000 transfer to Debtor's brother, were discovered at the 2004 Examination and the subsequent Depositions, before the Second Amended Schedules were filed. (Compl. ¶30, ECF No. 1; Answer ¶30, ECF No. 4; 2004 Exam Tr. 72:5-21, 102:14-105:19, ECF No. 11-5; Def.'s Aff. Opp'n to Pl.'s Mot. Summ. J. ¶¶3, 22-23, ECF No. 14; Sham Singh Dep. 46:6-13, ECF No. 11-7; Summ. J. Mot. Hr'g Tr. 10:23-11:25, ECF No. 20.). Yet Debtor never amended his Schedule E/F or SOFA in either the First Amended Schedules or the Second Amended Schedules. Debtor's counsel offered to amend the schedules after the Hearing. (Summ. J. Mot. Hr'g Tr. 14:15-15:22, ECF No. 20.). However, Debtor had ample opportunities to correct these errors before the Hearing and any amendments thereafter would appear to be too late. See, e.g., In re Gonzalez, 553 B.R. 467, 470-71 (Bankr. E.D.N.Y. 2016) ("when the documents exhibit a pattern of errors and the debtor does not correct those errors until they are uncovered […], then that debtor runs the risk of forfeiting his or her right to a discharge"); Carl, 517 B.R. at 71 (citing In the Matter of Kilson, 83 B.R. 198, 203 (Bankr. D.Conn. 1988)) ("[a]lthough amendments can cure defects in petitions, they are not evidence of innocent intent in a § 727 action 'where the debtor has changed his testimony or amended his schedules only after the trustee or creditors have already discovered what the debtor sought to hide or when the change in testimony or amended schedules are precipitated by the trustee's persistence in uncovering the truth' "). Moreover, the

12

Second Circuit has recognized that fraudulent intent may be inferred from a series of incorrect statements and omissions contained in the schedules. <u>Moreo</u>, 437 B.R. at 62 (citing <u>Dubrowsky</u>, 244 B.R. at 576). The aggregate of misstatements and omissions of fact can demonstrate a pattern of reckless disregard for the truth and intent of concealing information from the Court and its creditors. <u>See</u> <u>Shah</u>, 388 B.R. at 38-39 ("Each of these facts taken individually may not rise to the level of materiality, but cumulatively, they show a pattern of deceit."). The record on this motion supports the conclusion that Debtor filed his schedules and SOFA with, at a minimum, a reckless indifference to the truth.

### D.  Element 5: Materiality of the Statements

Finally, Debtor's false statements are material to the bankruptcy case. Materiality depends on whether the information is pertinent "to the debtor's business transactions, or if it concerns the discovery of assets, business dealings, or the existence or disposition of the debtor's property." <u>In re Gordon</u>, 535 B.R. 531, 538 (S.D.N.Y. 2015). A false statement or omission is material "if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property." <u>Id</u>. It is well settled in the Second Circuit that " '[m]ateriality does not require a showing that the creditors were prejudiced by the false statement.' " <u>Id</u>. (citing <u>In re Murray</u>, 249 B.R. 223, 229 (E.D.N.Y .2000)). The false statements in this case are material because they directly relate to the discovery of the Debtor's assets and liabilities.

Debtor failed to disclose the transfers made to his brother and father within one-year pre-petition. As the Second Circuit stated, such a transfer is a classic badge of fraud. <u>Antoniou</u>, 515 B.R. at 24 (citing <u>In re Kaiser</u>, 722 F.2d 1574, 1583 (2d Cir. 1983)). The fact that Debtor engaged in transfers to family members during the one year prior to the commencement of the case would

be highly material to the Debtor's creditors because the trustee may be able to recover these funds as a preferential transfer or fraudulent conveyance. Finally, false claims of exemptions are also a kind of concealment of assets and transfers that this Court takes into consideration in determining whether discharge should be denied under § 727(a)(4)(A). See Abramov, 329 B.R. at 135 (baseless homestead exemption claimed to a non-residence property "is exactly the type of concealment of assets and transfers from the chapter 7 trustee, the creditors, and this Court, that § 727(a)(4)(A) was meant to address").

Even if each of the omissions and false statements made by the Debtor, taken by itself, were insufficiently material to warrant the denial of a discharge, these falsehoods and omissions, in the aggregate, are of sufficient materiality to bar the Debtor's discharge under § 727(a)(4)(A). Abramov, 329 B.R. at 135 (citing In re Sapru, 127 B.R. 306, 315-16 (E.D.N.Y. 1991)). The Debtor's false oaths, taken together, are material because they relate to the Debtor's assets and liabilities and the possible recovery of assets for the estate.

### E.  Conclusion

Plaintiff has amply established a prima facie case that the Debtor made material misstatements with fraudulent intent. In response, the Debtor has failed to explain these misstatements, or to provide a credible explanation. Further, even after the Plaintiff objected to some of the apparent false statements made on Debtor's schedules or SOFA, Debtor still has not corrected his mistakes accordingly. Summary judgment is therefore warranted on this claim.

## II.    Other Claims

Given the conclusion that discharge should be denied under § 727(a)(4)(A), the claims under § 727(a)(2) will not be addressed.

<u>CONCLUSION</u>

For the reasons stated above, the motion for summary judgment is granted and Defendant is denied a discharge pursuant to § 727(a)(4)(A). A separate order will issue.



**Dated: Brooklyn, New York**
**May 29, 2018**

_____
    **Carla E. Craig**
**United States Bankruptcy Judge**